


Brian Barrett
Assistant General Counsel

200 Liberty Street
New York, New York 10128
T 212.621.7547

www.ap.org

October 30, 2020

VIA ELECTRONIC FILING

Hon. Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:    United States v. Ali Sadr Hashemi Nejad, No. 18-cr-224

Dear Judge Nathan,

I write on behalf of The Associated Press[1] and AP reporter Joshua Goodman in response to the Court's Order of October 20, 2020 (Dkt. No. 382), in the above referenced matter.

The AP respectfully requests permission to intervene and object to the letter requests filed by lawyers for the United States (Dkt. Nos. 383–87), which seek to seal in their entirety and at least temporarily the declarations and exhibits filed in response to the Court's Order of September 16, 2020 (Dkt. No. 379) (the "Documents").

The prosecution of the defendant in this matter, Ali Sadr Hashemi Nejad ("Sadr"), is of enormous public interest. The case, which the AP and other media have followed for more than a year, is one of the most prominent to date showing Iran's growing influence in Venezuela. Both nations are under U.S. sanctions and are ruled by governments that are hostile to the U.S.

There is also immense public interest in the case because of the Court's unusual reprimand of prosecutors for their late disclosures of evidence to the defendant. In its order, the Court said the problems identified in the prosecution, "cry out for a *coordinated, systemic* response from the highest levels of leadership within the United States Attorney's Office for the Southern District of New York."  Dkt. No. 379, at 13.  Such high-profile prosecutions inadvertently have the potential not only to deter criminal activity but also to shape U.S. foreign policy and relations with some of America's biggest adversaries.  It is imperative that the public know whether such proceedings may have been improperly influenced by government lawyers.

---

[1] The Associated Press ("AP") is a news cooperative organized under the Not-for-Profit Corporation Law of New York.  Its members and subscribers include the nation's newspapers, magazines, broadcasters, cable news services and Internet content providers.  The AP has no parent company or equity stock, and it has no financial interest in the outcome of this litigation.

1

The AP's Right to Intervene

The AP seeks to uphold the constitutional and common law rights of public access to judicial proceedings and documents.  The Second Circuit has recognized a motion to intervene as the procedurally proper device for purposes of protecting the right of access. *See, e.g.*, *United States* v. *King*, 140 F.3d 76, 78 (2d Cir. 1998); *see also United States* v. *Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (holding "a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper").

The Right of Access to Judicial Documents and Proceedings

The First Amendment and common law provide qualified rights of public access to court proceedings and records.  *See, e.g., Richmond Newspapers* v. *Virginia*, 448 U.S. 555, 571 (1980) (public right of access to criminal trials); *Press-Enterprise Co.* v. *Superior Court* ("*Press-Enterprise I*"), 464 U.S. 501, 505–08 (1984) (voir dire).  The right is premised on "the common understanding that 'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.'"  *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 604 (1982) (citation omitted).  "Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."  *Press-Enterprise I*, 464 U.S. at 508.

Under the First Amendment, "judicial documents" may not be sealed "unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enterprise Co.* v. *Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 13–14 (1986); *see also In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

The common law provides a qualified right of public access to inspect and copy judicial records in a criminal trial.  *Nixon* v. *Warner Commc'ns*, 435 U.S. 589, 597–98 (1978).  The right is based on the need for federal courts "to have a measure of accountability and for the public to have confidence in the administration of justice."  *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal citation omitted).  Courts apply a three-step analysis: (i) whether the document is a "judicial document"—*i.e.*, whether it is "relevant to the performance of the judicial function and useful in the judicial process"; (ii) if so, the weight of the presumption to be applied; and (iii) a balancing of competing interests against the presumption of access.  *Id.* at 119–20.

In this matter, each of the three factors weigh in favor of immediate public access.

First, and perhaps the only substantive question at issue, is whether the Documents, which were submitted post-judgment and in response to the Court's inquiry about the disclosure issues leading to dismissal of the charges against Sadr, are "judicial documents," subject to the constitutional and common law rights of access.

The government sealing requests argue they are not, pointing to a tradition of confidence that exists in the context of lawyer disciplinary proceedings to argue that the documents filed here should also be treated as presumptively confidential. The briefs also provide examples of cases in which courts conducted *in camera* inspection of documents while considering sanctions or contempt orders against attorneys.

The problem with those arguments, of course, is that the Documents sought to be sealed here were submitted as part of a criminal trial, not disciplinary or sanctions proceedings, and they relate directly to the issues that led to the dismissal of the criminal charges and jury verdict against Sadr. The Court is conducting a post-judgment inquiry into the potential bad acts that led to that dismissal, and while it is possible that the inquiry will end in a referral for disciplinary proceedings, the substance of the inquiry is directly "relevant to the performance of the judicial function and useful in the judicial process." *See Lugosch*, 435 F.3d at 119; *see also United States* v. *Simone*, 14 F.3d 833, 840 (3d Cir. 1994) ("First Amendment right of access attaches to post-trial hearings to investigate jury misconduct.").

Indeed, the presumptive right of access is particularly important when, as here, court files relate to allegations of prosecutorial misconduct. *See Wash Post.* v. *Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (public right of access "serves an important function of monitoring prosecutorial or judicial misconduct"). The Court's inquiry will shed light on the reasons the government's case against Sadr dissolved. A full public accounting of the circumstances that led to the dismissal of the case is necessary to maintain public confidence in the administration of justice. *See Lugosch*, 435 F.3d at 119.

This is not a disciplinary proceeding. Nor is it solely an inquiry focused on possible sanctions. While the circumstances that led to the filing of the Documents are somewhat unique, see Dkt. No. 379, at 1 (describing the repeated disclosure violations as a first in the Court's "near decade" on the bench), they were nonetheless filed as part of the criminal prosecution against Sadr, and are subject to the public right of access.

Indeed, the right of public access is not limited to the trial itself. It has routinely been extended to include post-trial records. *See United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) (finding "no meaningful distinction" between pre-trial motions, motions at trial and post-trial motions when applying the qualified First Amendment right of access); *United States* v. *Ignasiak*, 667 F.3d 1217, 1238–39 (11th Cir. 2012) (reversing order allowing government to file under seal post-trial motion revealing potential grounds for impeachment of key government witness and finding public interest in information outweighed witness's interest in privacy); *Simone*, 14 F.3d at 838 (public right of access to a post-trial examination of juror misconduct). The fact that the Documents were filed post-judgment does not diminish their relevance to the performance of the judicial function or the public's need to understand what happened in this case to maintain confidence in the judicial process.

Once the Court accepts the Documents are "judicial documents," the analysis is straightforward. At no point do the government sealing requests identify a compelling interest that would be prejudiced by public disclosure. Nor is it obvious what those interests would be, aside perhaps

3

from a desire to avoid embarrassment.  *But see United States* v. *Martoma*, No. 12-cr-973, 2014 WL 164181, at *6 (S.D.N.Y. Jan. 9, 2014) (concluding defendant's interest in maintaining closure to avoid embarrassment "does not trump the presumptive right to public access that attaches to substantive pre-trial motions").

Even if one had been offered, however, it is difficult to believe sealing would be narrowly tailored or effective to protect that interest, as the Court has already explored the substance of the misconduct allegations publicly and in depth in its Order of September 16, 2020 (Dkt. No. 379). In any event, the substance of the Documents "directly affect an adjudication," *Lugosch*, 435 F.3d at 119, and played a significant role in the determination of the defendant's "substantive rights." *See United States* v. *Graham*, 257 F.3d 143, 151–53 (2d Cir. 2001) (determination of substantive rights is "at the heart of Article III" and implicates the right of access).  The disclosure issues were "the primary basis" for the decision to dismiss the case against Sadr. *Id.* The Court should thus apply a heavy presumption of access to the records.

Finally, any balancing of competing considerations should land squarely on the side of public disclosure given the immense public interest in the government's prosecution of Sadr and the serious questions raised by the Court concerning the prosecutors' conduct in this case.

That does not necessarily mean that *all* the documents must be unsealed, particularly with respect to correspondence within the exhibits that contain truly personal information unrelated to the misconduct allegations at issue.  But the First Amendment and common law establish a demanding threshold for sealing documents in a criminal trial, and, respectfully, we believe the requests to seal fall short in this case.

Contemporaneous Right of Access

Last, I write to address the time-related request in the sealing motions that the materials be sealed "pending the Court's determination of the issues identified in its September 16, 2020 order." *See, e.g.*, Dkt. No. 385.  The right of access afforded by the First Amendment is a right of contemporaneous access.  *See Doe* v. *Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014).  "Each passing day [access is denied] may constitute a separate and cognizable infringement of the First Amendment." *Id.* (quoting *Neb. Press Ass'n* v. *Stuart*, 427 U.S. 539, 580 (1976)).

The AP respectfully requests that the Documents be unsealed immediately.  But if the Court nevertheless determines that it will seal the materials pending its own *in camera* review, the Court should promptly unseal any and all portions of the materials on which the Court relies in reaching its merits decision immediately upon making that decision.

Thank you for your consideration of this matter.

Sincerely,


/s/ Brian Barrett

4