

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 30, 2020

**BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

   **Re:**   *United States v. Ali Sadr Hashemi Nejad*, 18 Cr. 224 (AJN)

Dear Judge Nathan:

We respectfully submit this letter to supplement our July 2, 2020, letter (the "July Letter") in two respects (and to clarify an ambiguity in footnote 3 of this letter as filed earlier this evening). The first involves telephone records associated with the Government's handling of GX 411. The second relates to information we received from the Federal Bureau of Investigation ("FBI") in the past week concerning searches FBI personnel had conducted, on an FBI review platform, of email search warrant returns in this case. These searches were distinct from the searches at the Manhattan District Attorney's Office ("DANY") that were the subject of suppression litigation in this case, as to which the Government and this Court have already identified serious flaws. (*See* Dkt. 354 at 7; Dkt. 379 at 6-8, discussing conduct that "was likely unconstitutional because review of search-warrant returns must be done in conformity with the warrants themselves").

**Matters Relating to GX 411**. The July Letter made several references to telephone records. Following up on questions that I received from AUSAs when they were preparing their declarations, I asked SDNY Special Agent Sean Smyth to review the telephone records. Based on his evaluation, I have one amplification and one correction to make to the July Letter.

First, on page 11 of that letter, I describe a conference call the morning of Saturday, March 7, 2020, between AUSAs Lake, Kim, and Krouse. (*See* Dkt. 354 at 11). I neglected to mention that during that conference call, which began at approximately 9:23 a.m., and which lasted for 26 minutes, it appears that SAUSA Lynch called AUSA Lake at approximately 9:24 a.m.[1] That call went straight to voicemail; but, at approximately 9:39 a.m., SAUSA Lynch called AUSA Lake again and was joined into the conference call for its remaining 10 minutes.

---

[1] AUSA Lake has advised that she has a very clear recollection that it was she who initiated the first call with SAUSA Lynch that went straight into voicemail. Although the point is not material, we note this discrepancy.

The Honorable Alison J. Nathan                                                                                  Page 2
October 30, 2020

Second, at pages 14-15 of the letter, I state "At 9:53 p.m., Chiefs Crowley and Bove called AUSA Krouse. Mobile phone records indicate this call lasted until 9:59 p.m., one minute before the Court's deadline." (*Id.* at 11). However, as clarified by Special Agent Smyth's analysis, there were multiple calls between 9:51 p.m. and 9:59 p.m. Specifically, at 9:51 p.m. Chief Bove called Chief Crowley; and at approximately 9:52 p.m. Chief Crowley conferenced AUSA Krouse into that call, which continued for up to one minute. At 9:53 p.m. Chief Bove initiated a separate call to Chief Crowley, which lasted for up to six minutes.

**Matters Relating to the Email Searches**. In the July Letter, we referenced materials we identified after trial that undercut the constitutional validity of the email search warrant review in this case. (*See id.* at 7). In doing so, we noted that "while we are not at this moment aware of any additional information that would have to be disclosed in this regard, given the late disclosures here, and the difficulties in reconstructing every detail of the investigation conducted by the FBI and DANY before this Office took over the case, we cannot discount the possibility that additional information supporting a motion to suppress might be identified." (*Id.*). Additional information has in fact surfaced.

Specifically, on October 23, 2020, a Supervisory Special Agent ("SSA") at the FBI informed our Office that the FBI had loaded some or all of the raw email search warrant returns in this case onto an FBI review platform known as "BIDMAS."[2] The FBI has since provided us with two documents from its case file that reference this BIDMAS database. The first, dated December 11, 2014, states that "email search warrants and Grand Jury subpoenas have been executed by DANY and the results provided to FBI NY for review in furtherance of its case," and requests authorization to upload those materials, and future data, into BIDMAS. The second, dated April 18, 2016, is a 28-page report by an FBI forensic accountant (the "Forensic Accountant"). The report is entitled "BSA Summary for Stratus Global Investments LTD - Suspicious Activity," and, among other things, states that its author "obtained search warrant material provided by DANY and was able to review content through the FBI's proprietary software, BIDMAS," and discusses materials identified in that review, "as corroborated by the email search warrants provided by DANY."[3]

---

[2] The SSA learned of these materials on or about October 22, 2020, when, in preparing for some office moves, she found a hard-copy binder that said "Sadr BIDMAS printouts."

[3] When we reviewed the FBI file after trial for additional discovery material, we did not recognize the significance of the December 2014 request to establish the BIDMAS database.  Rather, it was because of disclosures made following that review, and specific questions that the defense raised concerning FBI involvement in the search for certain documents, that the issue of the FBI's role in querying DANY's database emerged and, as noted above, contributed to our decision to *nolle* this case, before we were aware of the FBI's own database of raw search warrant returns. The Forensic Accountant's report, which we received in September 2017 in connection with an evaluation of certain property purchases, did not specify that the "search warrant material provided by DANY" consisted of raw search warrant returns, as opposed to material identified by DANY as responsive to its warrants.

The Honorable Alison J. Nathan											Page 3
October 30, 2020

The FBI has also provided this Office with BIDMAS logs, which show that FBI personnel and BIDMAS contract personnel searched the database approximately 636 times between January 2015 and January 17, 2017, the date of the last database search. (This Office became involved in this investigation in approximately May 2017.) The searches were principally conducted by the former case agent on this matter, who was transferred to another squad in the New York Field Office in March 2017, and then transferred to FBI headquarters in November 2017; two agents and one task force officer in Baltimore, who were involved in a related matter; the Forensic Accountant mentioned above, who left the FBI in June 2017; and BIDMAS contract personnel.[4] Some of the searches appear to have related to investigations other than that of Sadr. We do not yet have a thorough understanding of matters relating to this BIDMAS database, but the foregoing suffices to raise substantial concern.

As reflected in our previous filings, we have extensively reviewed materials in this case, including communications and other documents related to the suppression litigation. Based on that review, and inquiries concerning this BIDMAS database, we are confident that none of the AUSAs involved in this prosecution were aware that the FBI possessed or searched its own database of raw search warrant returns; likewise, former SAUSA Lynch has confirmed that he was unaware of the BIDMAS database until this week; did not know that the FBI had loaded this data into BIDMAS; and understood throughout the period when he was assigned to the case, beginning in May 2015, that DANY was not providing search warrant returns to the FBI.[5]

We have raised the seriousness of this unexpected development (on top of other issues in the case) with FBI New York leadership, and the FBI will be conducting its own review of this matter. Absent full facts, we do not know what remedial measures will result from this, but there will certainly be a substantial response. The FBI has already scheduled mandatory training for the entire

---

[4] The SSA believes that searches conducted by BIDMAS contractor personnel would only have been conducted at the direction of FBI personnel.

[5] SAUSA Lynch notes that with respect to one warrant issued in April 2016, an FBI special agent served as the warrant application affiant and, as such, he knew that agent did receive that return.

New York Field Office on discovery issues in November 2020, with particular emphasis on the restrictions on searching electronic search returns. All personnel attending this training will review this Court's September Memorandum and Order describing the errors in this prosecution. The FBI is also considering a requirement for consultation with FBI Division Counsel before the initiation of reviews of electronic search returns to ensure that proper restrictions are being observed.

                                        Respectfully submitted,

                                        AUDREY STRAUSS
                                        Acting United States Attorney

                by: _____
                                        JOHN M. McENANY
                                        Associate United States Attorney
                                        (212) 637-2571